ORDERED in the Southern District of Florida on 03/09/07



Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| In re: | Case No. 05-28440-BKC-RBR |
| Joan E. Moodie, | Chapter 7 |
| Debtor_____/ | |
| Soneet R. Kapila | |
| Plaintiff | Adv No. 06-1274 |
| v. | |
| Joan E. Moodie | |
| and | |
| Gillon M. Crosdale | |
| Defendants._____/ | |

**MEMORANDUM OPINION DENYING COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C.§548 AND FLORIDA STATUTES §726 et. seq. AND TO SELL REAL PROPERTY PURSUANT TO 11 U.S.C. §363(h).**

Page 1 of 16

THIS MATTER came before the Court for trial on January 23, 2007, on the Complaint (C.P.1) filed by the Trustee, Soneet Kapila, to *Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C.§548*[1] *and Florida Statute §726 et. seq. and to Sell Real Property Pursuant to 11 U.S.C.§363(h)* . After considering the testimony of the Debtor, Joan Moodie, and the Defendant, Gillion Crosdale, the exhibits in evidence, and the applicable law, the Court denies the Complaint for the reasons that follow.

### Findings of Fact[2]:

The Debtor, a Jamaican immigrant, is a high school graduate who holds two jobs. The Debtor's first job is with Hallandale High School, where she works with disabled children as a teacher's assistant. Her second job is as a stocking clerk with Wal-Mart. Even after combining the income from both of her jobs the Debtor makes a minimal income. She testified that the most she is able to save in any given month is $50.00. She further testified that to her knowledge, she never had more then $900.00 in a bank account at any given time, and this sum reflected her balance before her living expenses were deducted. The Debtor's schedules reflect a modest life with some meager retirement savings.[3]

The Debtor filed the instant Chapter 7 on October 13, 2005. Prior to the instant filing the Debtor attempted a Chapter 13 filing. *See In re: Moodie*, 01-24670-PGH (Bankr. S.D. Fla. 2001)(filed June 25, 2001). The Chapter 13 case was dismissed on March 29, 2002, when the Debtor was unable to fund the confirmed plan. *See id.* The

---

[1] All future statutory references are to *11 U.S.C. §101 et seq.* unless otherwise stated.

[2] The Findings of Fact contained herein are the same as those contained in the *Memorandum Opinion Denying Objection to Debtor's Discharge*.

[3] The Debtor listed on her amended schedules a Tax Sheltered Annuity with a value of $3,416.65; a 401-k Pension plan with a value of $1,147.25; and a Wal-Mart Associate stock ownership plan with a value of $1,126.22

Debtor testified that most, if not all of her debts listed in the current Chapter 7 filing were listed in her previous Chapter 13 filing.

The Defendant, Gillion Crosdale (hereafter "Crosdale"), is the Debtor's mother. As a method to save money she began investing in real estate purchasing and selling properties over the last few years. Crosdale also testified that she suffered the misfortune of losing her younger brother at the age of 54. She testified that she has no saving or retirement accounts. She also stated that she became unemployed in early 2004 and did not regain full-time employment until late 2006, and that under no circumstances could she have afforded to give any real property away as a gift.

Prior to the filing of the instant bankruptcy Crosdale purchased a piece of undeveloped real property located at 1213 NW 37th Avenue, Cape Coral Florida 33993 (hereafter "1213 property"). On October 7, 2004, the seller executed a deed, which on its face, conveys the real property to Crosdale and Debtor as joint tenants with rights of survivorship. Despite being listed on the deed, the Debtor testified to having no involvement with the 1213 property.[4] She further testified to being unaware that Crosdale titled the subject property in both their names until sometime afterwards. The Debtor also testified that she first viewed the 1213 property sometime after the current bankruptcy filing, in response to the litigation.

Crosdale testified that she provided all of the money for the purchase of the 1213 property. This is consistent with the Debtor's testimony that she provided none of the funds used in the purchase. Crosdale also produced documents, which evidence her receipt of $109,159.75 from the sale of a different piece of property. A large portion of these funds, $103,159.75 were then deposited on August 24, 2004, into Crosdale's

---

[4] The warranty deed, which was signed on October 7, 2004, shows that title was transferred from the seller to the Defendant and Debtor as joint tenants with rights of survivorship.

Washington Mutual bank account. The evidence also shows that Crosdale was the one who:(i) hired the real estate professionals; (ii) signed the purchase agreement; (iii) paid the deposit; (iv) applied for title insurance; (v) paid the balance due at closing; and (vi) paid all the expenses of ownership[5]. The Debtor credibly testified that she was totally uninvolved in the transaction, in fact she testified to having never heard of, or met the seller, and in no way contributed to the upkeep or maintenance of the 1213 property.

Introduced into evidence is a June 17, 2005, mortgage, which is signed by both the Debtor and Crosdale. There was no evidence that the Debtor was a signatory or a co-maker on the promissory note. The Debtor testified to being unaware of the mortgage until it was brought to her attention during a deposition. She testified that she would sign, without review or understanding, any document her Mother would present to her, if it was regarding her Mother's real estate holdings.

The Debtor testified that she had never had any interest in Crosdale's real estate affairs. She could also not recall when she first became aware that her name was on the deed. However, the Debtor is credibly unsophisticated when it comes to real estate business matters. Further, she did not appreciate any significance relating to her signing the mortgage documents.

The Debtor truthfully testified that she never (i) intended to borrow money; (ii) received any mortgage proceeds; (iii) made a mortgage payment; (iv) communicated with, or received communication from the mortgage company; and (v) saw a mortgage coupon. The Debtor also testified that it was her understanding that she was not obligated under the loan and thus never scheduled it in her bankruptcy. She also stated that when she checked her credit report after the mortgage date she saw no reference therein to the mortgage.

---

[5]These include payments to the City of Coral Gables, The Lee County Tax Collector, and a "lot mowing program".

Crosdale, in contrast introduced correspondence from the mortgage lender. This correspondence dealt with the application for the mortgage, as well as, issues regarding its satisfaction. All of this correspondence was addressed solely to Crosdale. Also introduced was a check from the lender for $30,000.00 that named Crosdale alone as payee. The check was endorsed only by Crosdale and deposited into her Suntrust Bank account. There was evidence introduced showing that Crosdale was the only one who made the monthly payments. Furthermore, the evidence shows that she was the one who ultimately paid off the balance using the proceeds from the sale of another property.

On June 20, 2005, the Debtor executed a warranty deed transferring the 1213 property to Crosdale. There was no consideration paid. The deed was signed, just as the mortgage was, at Crosdale's instruction. Crosdale testified that the motivation behind signing the deed was to avoid having her assets tied up with her daughter's bankruptcy.

The Debtor credibly testified that she had no interest in her mother's real estate holdings. She also stated that after seeing the 1213 property, subsequent to the commencement of the litigation, it was "too bushy" for her tastes and she would not want to relocate to the area or be involved with the property in any way. The Debtor also stated that she did not believe the property to be hers and therefore it could not be used to satisfy her creditors. She also asserted that if she owned anything of value she would use it to repay her debts. Consistent with this testimony the Debtor stated that had she believed she was the part-owner of the 1213 property she would have contributed to its upkeep and maintenance.

Crosdale testified that the purpose behind titling the 1213 property jointly was to assure that the Debtor, Crosdale's daughter, would have rights upon Crosdale's death. Crosdale also testified that the 1213 property was the only property which was titled jointly. This evidence comports with testimony from Crosdale, that had she included the

Debtor on her other properties the interest rate would have increased because of the Debtor's poor credit. This testimony is buttressed by the Debtor's credible statement that she had once tried to purchase a home, but was denied due to her poor credit rating.

### Conclusions of Law:

The Trustee seeks avoidance and recovery of fraudulent transfers made by the Debtor to Crosdale pursuant to §548(a)(1)(B), §550 and Florida Statute §726.105(a), §726.105(1)(b) and §726.106(1). The Court has jurisdiction over this matter pursuant 28 U.S.C. §157 and §1334(b). This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(A),(H),(N) and (O).

### Trustee's §548(a)(1)(B) Claim

In order for the Trustee to succeed on a §548(a)(1)(B)[6] claim he must prove: (i) that there was a transfer of an interest of the debtor in the property; (ii) that the transfer occurred within one year preceding the filing of the bankruptcy petition; (iii) that the debtor received less than a reasonably equivalent value in exchange for this transfer; (iv) that the debtor was either insolvent on the date of the transfer, or became insolvent as a result of the transfer. *In re: Ear, Nose & Throat Surgeons, Inc.*, 49 B.R. 316, 319 (Bankr. D. Mass. 1985)(listing the four requirements to succeed on a §548 action);*accord In re: Ocean Line of North Florida*, 137 B.R. 540, 542-43 (Bankr. M.D. Fla. 1992).

---

[6] The Court notes that Florida Statute §726.106(1) is identical in pertinent part to 11 U.S.C. §548(a)(1)(B). Therefore, the analysis of §548(a)(1)(B) shall apply equally to Florida Statute §726.106(1). *See In re: Toy King Distributors, Inc.* 256 B.R.1, 141-42 (Bankr. M.D. Fla 2000).

The Court will promptly dispose of the second element because it is undisputed. The Debtor signed the June 20, 2005 warranty deed. The Debtor filed for relief under Chapter 7 on October 13, 2005, therefore there was a transfer within one year of the bankruptcy petition.

This claim turns on the outcome of the first and third prongs. The first prong requires that the debtor transfer an "interest". See *In re: Ear, Nose & Throat Surgeons Inc.*, 49 B.R. 319. The third prong requires that the debtor receive less then reasonably equivalent value for the transfer of the interest.

### The Interest of Debtor in the 1213 Property

The Court finds that the first prong has been met in that the Debtor possessed bare legal title interest in the property. Based on the following analysis the Court concludes that there existed a purchase money resulting trust between the Debtor and Crosdale.

The law in Florida recognizes that a purchase money resulting trust is presumed "[w]here property is transferred to one person and the purchase price is paid by another." See *Mitchell v. Grapes*, 146 So. 2d 591,594 (Fla. Dist. Ct. App. 1962)(holding that the plaintiffs failed to make the requisite evidentiary showings to establish a purchase money resulting trust) *rev'd,* 159 So. 2d 465 (Fla.1963)(holding that the evidence indeed demonstrated that a purchase money resulting trust could be supported); *accord Sorrells v. Mcnally*, 89 Fla. 457 (Fla. 1925)(explaining that a "resulting trust ... arises by implication of law on a particular state of facts, as when one man's money has been invested in property and the deed taken in the name of another. It is sometimes defined as one which arises when the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title.")(citations omitted).

In a situation which is analogous to the one before this Court, Judge Mark, in *In re: Goldstein* held that a resulting trust existed in a bank account. *In re: Goldstein*, 135 B.R. 703, 705 (Bankr. S.D. Fla. 1992). The account signature card stated that the account was held as "join tenants with rights of survivorship". *Id.* In *Goldstein*, Mr. Kirpitznikoff intended to create a trust for members of his family, using the debtor as a trustee of the funds. *Id.* The debtor never received any benefit from the account or funds. *Id.* Judge Mark, thought it "inequitable to allow the creditors of [the debtor's] estate to share in funds that [the debtor] never thought of as his own." *Id.* The court then concluded that the parol evidence presented "clearly established" that a resulting trust existed. *Id* at 706.

Anther case which, is similar to *Goldstein*, is *In re: Nunley*, 19 B.R. 785, 787 (Bankr. E.D. Tenn. 1982). That case also involved a bank account held jointly with rights of survivorship. *In re: Nunley*, 19 B.R. 785, 787 (Bankr. E.D. Tenn. 1982). The joint account holders were the debtor, Mrs. Nunley, who was the mother of the non-debtor defendant Mr. Nunley. *Id* at 786. The court held that the funds belonged to the non-debtor defendant Mr. Nunley. *Id.*

The facts of the case before the Court lead to the same conclusion as *Nunley Goldstein*. The Debtor credibly testified that she never believed she owned any part or portion of the 1213 property. She testified that she had no interest in Crosdale's real estate activities. She also testified that she would execute any document relating to the 1213 property that Crosdale, her mother, presented to her. Further, the Debtor did not receive proceeds from the mortgage on the 1213 property. Crosdale credibly established that the sole purpose of including the Debtor on the October 7, 2004, deed was for estate planning purposes. Most importantly, the testimony of both the Debtor and Crosdale and the other evidence, credibly, consistently, and convincingly shows that only Crosdale paid for the property. Based on the above cases and the evidence

presented the Court determines that there was a purchase money resulting trust in favor of Crosdale.

The Trustee asserts that even if the Court finds that a purchase money resulting trust exists, nonetheless because of the parties' familial relationship there is a presumption that the transfer to the Debtor was a gift. The Court declines to accept the Trustee's assertion that Crosdale included the Debtor on the deed as gift. The *Nunley* case discussed above found a resulting trust could exist between a parent and child. See *In re: Nunley*, 19 B.R.785, 787 (Bankr. E.D. Tenn. 1982); accord *Jones v. Kellman (In re: Kellman)*, 248 B.R. 430,435 (Bankr. M.D. Fla. 1999)(finding that a resulting trust could exist between husband and wife). Although *In re: Nunley* and *Jones v. Kellman* support the findings of this Court. The Court believes that the controlling law[7] is an old Fifth Circuit case, *Bird v. Stein.*

In that case the court had to decide whether a resulting trust existed between a brother and his sisters with respect to property purchased by the father. See *Bird v. Stein*, 258 F.2d 168,176 (5th Cir. 1958). The Court statement of the law of resulting trusts was:

> A resulting trust arises presumptively where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property. Where property is purchased by one person and the property is transferred at his direction to another, it is inferred that the purchaser intended that the grantee should hold the property for the benefit of the purchaser.' 4 Scott on Trusts, Sec. 404.1, p. 2922. See *Chichester v. Chichester*, 209 Miss. 628, 48 So.2d 123; *Bush v. Bush*,134 Miss. 523, 99 So. 151. The inference or presumption is to the contrary, however, where the title is taken in the name of a close relative. Thus, 'where a parent purchases property in the name of his child, a gift is presumed even though the child is an adult'. 4 Scott on Trusts, Sec. 442, p. 3035. See *Wilson v. Beauchamp*, 1870, 44 Miss. 556.

---

[7]Decisions issued by the old Fifth Circuit are binding as precedent on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

*See Bird v. Stein*, 258 B.R. at 176. However, the Court of Appeals also stated with respect to the above language, "[t]hese are inferences only and may be rebutted, but they impose on appellants the burden of establishing the trust." *See Id* at 177. The Court finds that Debtor and Defendant have successfully rebutted the presumption that the 1213 property was given as a gift to the Debtor by "clear, strong, unequivocal, unmistakable" evidence. *See Bird v. Stein*, B.R. at 177.

This strong evidence includes the Debtor's credible testimony that she never (i) intended to borrow money; (ii) received any mortgage proceeds; (iii) made a mortgage payment; (iv) communicated with, or received communication from the mortgage company; and (v) saw a mortgage coupon. The Debtor also testified that it was her understanding that she was not obligated under the loan and thus never scheduled it in her bankruptcy. It also includes the consistent testimony of Crosdale that she was the one who: (i) hired the real estate professionals; (ii) signed the purchase agreement; (iii) paid the deposit; (iv) applied for title insurance; (v) paid the balance due at closing; and (vi) paid all the expenses of ownership.

Based on the foregoing analysis the Court determines that there is a purchase money resulting trust in favor of Crosdale. As such, the Debtor holds a bare legal interest because of the purchase money resulting trust. The Eleventh Circuit law is clear and settled that "an interest that is limited in the hands of the debtor is equally limited in the hands of the estate, and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property" *See Kapila v. Atl. Mortg. & Inv. Corp.(In re: Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999). Consequently, the first element is established there was a transfer the Debtor's interest, which was bare legal title to the 1213 property.

**Debtor's Receipt of Reasonably Equivalent Value**

The Trustee fails to adequately establish the third element required by §548, that less then reasonably equivalent value was exchanged for the transferred interest. In *Jensen v. Gillman (In re: Gillman)*, the court determined " the Debtor never had anything more than a bare legal title interest in the property and what he transferred had no real economic value." *Jensen v. Gillman (In re: Gillman)*, 120 B.R. 219 (Bankr. M.D. Fla 1990). The court further noted that the transfer of bare legal title for free is not less then reasonably equivalent value. *See id.* (stating "measured in an economic sense, the conveyance of the Debtor's interest in the subject property to the Defendant had no value. Thus, the transfer cannot be challenged as a fraudulent transfer under § 548(a)(2)").

The Court notes that *Jensen v. Gillman (In re: Gillman)* is almost factually identical to this case. There was an undeveloped lot of property, which was titled jointly with rights of survivorship between the Defendant-mother and Debtor-son. *See Id.* at 220. The Mother paid all deposits and costs while the son contributed nothing. *Id.* Although the court did not explicitly find that a purchase money resulting trust existed, it did conclude that the Debtor held only an economically valueless legal title. *See id.*

The Court is persuaded that reasoning in *Jensen v. Gilliman* is correct. Bare legal title is economically valueless to this Debtor. Consequently, the transfer of it to Crosdale for nothing in return, does not constitute less then reasonably equivalent value. As such, the Trustee has failed to prove the third element. As a result, the §548(a)(1)(B) and Florida Statute §726.106(1) claims fail.

**Trustee's Florida Statutes §726.105(1)(b) Claim**

The Trustee also seeks the avoidance of the transfer of the 1213 property pursuant to Florida Statutes §726.105(1)(b). The section provides:

> (1) A transfer made or obligation incurred by a debtor is

> fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

The Trustee has failed to prove this claim. As with the §548(a)(1)(B) claim the Trustee must establish that the Debtor did not receive "reasonably equivalent value". The Court has already determined, in the analysis of the §548(a)(1)(B) claim, that the Debtor did receive reasonably equivalent value for her bare legal title. Therefore, for the same reasons the Florida Statutes §726.105(1)(b) claim also fails.

### Trustee's §548(a)(1)(A) and Florida Statutes §726.105(1)(a)

Finally, the Trustee seeks to avoid of the transfer of 1213 property pursuant to §548(a)(1)(A) and Florida Statutes §726.105(1)(a).[8] The crucial element is whether the Debtor acted or undertook the transfer "with actual intent to hinder, delay, or defraud" her creditors. *See* §548(a)(1)(A). This is almost identical to the language of §727(a)(2), which only lacks the word "actual". The test to determine if the Debtor acted with "actual intent" is the "badges of fraud" test. *See Dionne v. Keating (in Re Xyz Options),* 154 F.3d 1262, 1271 (11th Cir. 1998). The Eleventh Circuit delineated the following list of eleven "badges of fraud":

---

[8] Both provisions require proof of substantially the same elements and have been construed in the same manner. *See e.g. In re: McCarn's Allstate Fin., Inc.* 326 B.R. 843, 849 (Bankr. M.D. Fla. 2005).

(1) The transfer was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer was disclosed or concealed;

(4) Before the transfer was made the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

See id. at 1272. The Court notes that this badges of fraud test is similar to that required under §727(a)(2). As such, the Court adopts to the extent applicable, its determination in the concurrently issued *Memorandum Opinion Denying Objection to Debtor's Discharge*. Of the list above, only 2, 3, 5, 6, 7, 8, 9, and 10 are applicable.

The second indicator is whether the Debtor "retained possession or control of the property transferred after the transfer." See id. The Debtor never had possession or control of the property before the transfer let alone afterwards. Therefore, this indicator weighs against the Trustee.

The third test requires a demonstration that the transfer was concealed. See id. There is no evidence to show that the Debtor attempted to hide the transfer of 1213 property.

The fifth sign of fraud is that the transfer was of substantially all of the Debtor's assets. *See Dionne v. Keating (in Re Xyz Options),* 154 F.3d at 1272. This has not been demonstrated. Although the Debtor has a precious few assets, the bare legal title to the 1213 property was valueless; as such it did constitute the majority of her assets.

The sixth indicator is that the debtor absconded. *See id.* There has been no proof that the Debtor ever absconded or threatened to abscond. Quite the contrary, she has attempted to deal with her difficult financial situation through the bankruptcy process, as is demonstrated by her two filings.

The seventh test requires showing that the debtor removed or concealed assets. *See id.* This has already been dealt within the concurrently issued *Memorandum Opinion Denying Objection to Debtor's Discharge.* There the Court noted, in the context of §727(a)(3) that the Debtor did not conceal or fail to keep adequate records. The Court again reiterates that the Debtor displayed, on the whole, candor with respect to her financial condition. It also notes that she provided the required information to the best of her ability. As such, the Trustee fails under this test.

The eighth sign of fraud is that the debtor received less then reasonably equivalent value for the transfer of the asset. *See Dionne v. Keating (in Re Xyz Options),* 154 F.3d at 1272. In this case, this is the most applicable and important factor. It has been extensively discussed in the Court's analysis of §548(a)(1)(B) claim. The same findings, reasoning, and conclusion apply here. As such, the Court finds that the Debtor received reasonably equivalent value for the transfer of her bare legal title.

The ninth indicator is whether the debtor "was insolvent or became insolvent shortly after the transfer was made". *See id.* The purpose of this indicator is to prevent a debtor from transferring all or substantially all of their assets when they are insolvent or being rendered insolvent by the transfer, thus leaving nothing for their creditors. The Court believes that the meaning of "transfers" implies the transfer of valuable property.

This conclusion is the only logical one. As the examination required under this indicator is to look at the effect of the transfer on the solvency of the debtor. A valueless asset has no effect on a debtor's solvency.

There is ample evidence that the Debtor either was insolvent or became so right around the transfer of the property. However, the transfer was of a valueless asset. Therefore, it had no effect on her solvency either positively or negatively. Thus, the trustee has failed under the ninth indicator.

Finally, the tenth test is whether the transfer occurred around the time of the incursion of a substantial debt. *See id.* There has been no evidence that the Debtor incurred any extra or substantial debt around the time of the transfer. As such, the Trustee also failed to prove this element.

Based on the foregoing the Court concludes that the Trustee has failed to prove that the Debtor acted with "actual intent". As such, the claims pursuant to §548(a)(1)(A) and Florida Statutes §726.105(1)(a) are each denied.

### Trustee's §363(h) Claim

The Court does not need to address this issue due to the preceding findings, which have determined that the Debtor had no equitable interest in the 1213 property and that the transfer was not avoidable. Therefore, there is nothing for the Trustee to sell.

### Conclusion

Based on the foregoing the Court denies the Trustee's complaint (C.P.1) *To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C.§548 and Florida Statute §726 et. seq. and to Sell Real Property Pursuant to 11 U.S.C.§363(h)* . A separate Final Judgement in accordance with FED. R. BANKR. P. 9021 shall be entered contemporaneously herewith.

Copies to:

Michael R. Bakst, Esq.
Chester G. McLeod, Esq.
Mitchell H. Sens, Esq.
Gillion M. Crosdale
Joan E. Moodie
Soneet Kaplia