ORDERED in the Southern District of Florida on 03/09/07

Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:                                              Case No. 05-28440-BKC-RBR

Joan E. Moodie ,                                    Chapter 7

    Debtor
_____/

Soneet R. Kapila
                                                    Adv No. 06-1274
    Plaintiff

v.

Joan E. Moodie

and

Gillon M. Crosdale

    Defendants.
_____/

### MEMORANDUM OPINION DENYING OBJECTION TO DEBTOR'S DISCHARGE

THIS MATTER came before the Court for trial on January 23, 2007, on the Complaint

(C.P.1) filed by the Trustee, Soneet Kapila *Objecting to the Discharge of the Debtor, Joan Moodie, pursuant to 11 U.S.C. §727*[1]. After considering the testimony of the Debtor, Joan Moodie, and the Defendant, Gillion Crosdale, the exhibits in evidence, and the applicable law, the Court denies the objection to discharge for the reasons that follow.

### Findings of Fact:

The Debtor, a Jamaican immigrant, is a high school graduate who holds two jobs. The Debtor's first job is with Hallandale High School, where she works with disabled children as a teacher's assistant. Her second job is as a stocking clerk with Wal-Mart. Even after combining the income from both of her jobs the Debtor makes a minimal income. She testified that the most she is able to save in any given month is $50.00. She further testified that to her knowledge, she never had more then $900.00 in a bank account at any given time, and this sum reflected her balance before her living expenses were deducted. The Debtor's schedules reflect a modest life with some meager retirement savings.[2]

The Debtor filed the instant Chapter 7 on October 13, 2005. Prior to the instant filing the Debtor attempted a Chapter 13 filing. See *In re: Moodie*, 01-24670-PGH (Bankr. S.D. Fla. 2001)(filed June 25, 2001). The Chapter 13 case was dismissed on March 29, 2002, when the Debtor was unable to fund the confirmed plan. See *id*. The Debtor testified that most, if not all of her debts listed in the current Chapter 7 filing were listed in her previous Chapter 13 filing.

The Defendant, Gillion Crosdale (hereafter "Crosdale"), is the Debtor's mother. As a method to save money she began investing in real estate purchasing and selling properties over the last few years. Crosdale also testified that she suffered the misfortune of losing her

---

[1] All future statutory references are to *11 U.S.C. §101 et seq*. unless otherwise stated.

[2] The Debtor listed on her amended schedules a Tax Sheltered Annuity with a value of $3,416.65; a 401-k Pension plan with a value of $1,147.25; and a Wal-Mart Associate stock ownership plan with a value of $1,126.22

younger brother at the age of 54. She testified that she has no saving or retirement accounts. She also stated that she became unemployed in early 2004 and did not regain full-time employment until late 2006, and that under no circumstances could she have afforded to give any real property away as a gift.

Prior to the filing of the instant bankruptcy Crosdale purchased a piece of undeveloped real property located at 1213 NW 37th Avenue, Cape Coral Florida 33993 (hereafter "1213 property"). On October 7, 2004, the seller executed a deed, which on its face, conveys the real property to Crosdale and Debtor as joint tenants with rights of survivorship. Despite being listed on the deed, the Debtor testified to having no involvement with the 1213 property.[3] She further testified to being unaware that Crosdale titled the subject property in both their names until sometime afterwards. The Debtor also testified that she first viewed the 1213 property sometime after the current bankruptcy filing, in response to the litigation.

Crosdale testified that she provided all of the money for the purchase of the 1213 property. This is consistent with the Debtor's testimony that she provided none of the funds used in the purchase. Crosdale also produced documents, which evidence her receipt of $109,159.75 from the sale of a different piece of property. A large portion of these funds, $103,159.75 were then deposited on August 24, 2004, into Crosdale's Washington Mutual bank account. The evidence also shows that Crosdale was the one who:(i) hired the real estate professionals; (ii) signed the purchase agreement; (iii) paid the deposit; (iv) applied for title insurance; (v) paid the balance due at closing; and (vi) paid all the expenses of ownership[4]. The Debtor credibly testified that she was totally uninvolved in the transaction, in fact she testified to

---

[3] The warranty deed, which was signed on October 7, 2004, shows that title was transferred from the seller to the Defendant and Debtor as joint tenants with rights of survivorship.

[4] These include payments to the City of Coral Gables, The Lee County Tax Collector, and a "lot mowing program".

having never heard of, or met the seller, and in no way contributed to the upkeep or maintenance of the 1213 property.

Introduced into evidence is a June 17, 2005, mortgage, which is signed by both the Debtor and Crosdale. There was no evidence that the Debtor was a signatory or a co-maker on the promissory note. The Debtor testified to being unaware of the mortgage until it was brought to her attention during a deposition. She testified that she would sign, without review or understanding, any document her Mother would present to her, if it was regarding her Mother's real estate holdings.

The Debtor testified that she had never had any interest in Crosdale's real estate affairs. She could also not recall when she first became aware that her name was on the deed. However, the Debtor is credibly unsophisticated when it comes to real estate business matters. Further, she did not appreciate any significance relating to her signing the mortgage documents.

The Debtor truthfully testified that she never (i) intended to borrow money; (ii) received any mortgage proceeds; (iii) made a mortgage payment; (iv) communicated with, or received communication from the mortgage company; and (v) saw a mortgage coupon. The Debtor also testified that it was her understanding that she was not obligated under the loan and thus never scheduled it in her bankruptcy. She also stated that when she checked her credit report after the mortgage date she saw no reference therein to the mortgage.

Crosdale, in contrast introduced correspondence from the mortgage lender. This correspondence dealt with the application for the mortgage, as well as, issues regarding its satisfaction. All of this correspondence was addressed solely to Crosdale. Also introduced was a check from the lender for $30,000.00 that named Crosdale alone as payee. The check was endorsed only by Crosdale and deposited into her Suntrust Bank account. There was evidence introduced showing that Crosdale was the only one who made the monthly payments.

Furthermore, the evidence shows that she was the one who ultimately paid off the balance using the proceeds from the sale of another property.

On June 20, 2005, the Debtor executed a warranty deed transferring the 1213 property to Crosdale. There was no consideration paid. The deed was signed, just as the mortgage was, at Crosdale's instruction. Crosdale testified that the motivation behind signing the deed was to avoid having her assets tied up with her daughter's bankruptcy.

The Debtor credibly testified that she had no interest in her mother's real estate holdings. She also stated that after seeing the 1213 property, subsequent to the commencement of the litigation, it was "too bushy" for her tastes and she would not want to relocate to the area or be involved with the property in any way. The Debtor also stated that she did not believe the property to be hers and therefore it could not be used to satisfy her creditors. She also asserted that if she owned anything of value she would use it to repay her debts. Consistent with this testimony the Debtor stated that had she believed she was the part-owner of the 1213 property she would have contributed to its upkeep and maintenance.

Crosdale testified that the purpose behind titling the 1213 property jointly was to assure that the Debtor, Crosdale's daughter, would have rights upon Crosdale's death. Crosdale also testified that the 1213 property was the only property which was titled jointly. This evidence comports with testimony from Crosdale, that had she included the Debtor on her other properties the interest rate would have increased because of the Debtor's poor credit. This testimony is buttressed by the Debtor's credible statement that she had once tried to purchase a home, but was denied due to her poor credit rating.

### Conclusions of Law:

The Trustee has sought to deny the Debtor's discharge pursuant to §727(a)(2), (a)(3) and (a)(4). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and

§1334(b). This matter is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(J).

The Trustee bears the burden to demonstrate by preponderance of the evidence that the elements of §727 warranting a denial of discharge are met. *See* FED. R. BANKR. P. *4005; In re: Chalik,* 748 F.2d 616, 619 (11th Cir. 1984)(noting that the original burden is on the objecting party); *accord Furr v. Lordy (In re Lordy),* 214 B.R. 650, 664 (Bankr. S.D. Fla 1997)(noting that the standard of proof in a §727 denial of discharge action is preponderance of the evidence)(citing *Grogan v. Garner,* 498 U.S. 279, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991)).

### Trustee's §727(a)(2) Claim

In order to successfully deny a debtor's discharge under §727(a)(2) the trustee must establish that:

> the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

The first requirement of §727(a)(2) is that the debtor must act "with intent to hinder, delay or defraud a creditor.." . The debtor's intent may be inferred from extrinsic evidence. *See Furr v. Lordy (In re: Lordy),* 214 B.R. 664 (citing *In re: Allen,* 203 B.R. 786 (Bankr. M.D. Fla. 1996); *In re: Mackey,* 158 B.R. 509, 512 (Bankr. M.D. Fla. 1993); *In re: Elliott,* 79 B.R. 944, 946 (Bankr. M.D. Fla. 1987)). Courts normally inspect the following "badges of fraud" to determine if the debtor acted with the requisite intent: (1) the objecting creditor had a "special equity" in the property converted; (2) the debtor and the transferee maintained a close relationship; (3) the debtor's possession, benefit, or use of the property; (4) the debtor engaged in a "sharp practice" of dealing prior to filing bankruptcy; (5) the debtor became insolvent as a result of the

transfers; (6) the conversion occurred after the entry of a judgment; and (7) the debtor received inadequate consideration. *Furr v. Lordy (In re: Lordy)*, 214 B.R. 664 (citations omitted). The Trustee has failed to establish by a preponderance of the evidence that the actions of the debtor are sufficient to meet this test.

The Trustee had no special equity in the 1213 property. Furthermore, to the extent that the trustee stands in the shoes of the Debtor, the Debtor possessed, at best, no more then mere legal title.[5] Thus, the only "asset", if any, that may have passed to the estate would have been mere legal title. See *Kapila v. Atl. Mortg. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999) (noting "the general principle that an interest that is limited in the hands of the debtor is equally limited in the hands of the estate, and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property");see also *Geremia v. Dwyer (In re: Dwyer)*, 250 B.R. 472, 474 (Bankr. R.I. 2000)(holding that when a debtor holds only bare legal title, and not equitable title to property, only the legal title becomes part of the debtor's bankruptcy estate). The holding of "mere legal" title is not sufficient to establish a "special equity" interest in the property. Therefore, the trustee has failed to prove that he, the estate, or the Debtor had a "special equity" interest in the 1213 property.

The second factor is undisputed. The Debtor and Crosdale are daughter and mother. Therefore, they have a close relationship. They have lived together for extended periods of time and helped each other financially when they were able.

The third factor has not been established. The Debtor did not have possession, derive any benefit from, or use the 1213 property. The Debtor testified that: she never saw the

---

[5] For a more detailed discussion on the Debtor's lack of ownership interest in the 1213 property refer to the concurrently issued *Memorandum Opinion Denying Complaint To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C.§548 and Florida Statutes §725 et seq. And to Sell Real Property Pursuant to 11 U.S.C. §363(h)*.

property until after the litigation had commenced; she had no interest in her mother's real estate activities; she never received any money from the mortgaging of the property; and the property is "too bushy" for her tastes. Crosdale testified that: she placed the Debtor on the deed for testamentary purposes; all monies derived from the mortgage were retained by her; and she alone paid for the maintenance and upkeep of the property. This testimony was found to be credible and there has been nothing introduced by the Trustee that would suggest otherwise. It is clear that the Debtor did not receive any benefit from the property, nor did she ever use or possess it.

The Trustee has also failed to establish the fourth factor. There has been no evidence presented that the Debtor engaged in a "sharp practice of dealing prior to filing". Although the court in *Furr* did not define what a "sharp practice of dealing prior to filing means". This Court's understanding is that the term a "sharp practice of dealing prior to filing" refers to a pattern of actions, which individually may be permissible, but when taken together demonstrate a concerted effort to thwart the rights of creditors. There is no pattern of activity exhibited by the Debtor which was, or appears to have been undertaken to thwart the rights of her creditors. Every indication is that this Chapter 7 bankruptcy filing is the result of her inability, because of a lack of funds, to successfully complete her previous Chapter 13 filing. To this end the Debtor testified that if she had any assets of value she would have used them to pay off her creditors. The Debtor has credibly demonstrated to the Court that she is an honest and hardworking individual of limited resources, precisely the type of person who deserves a discharge.

Upon examination of the fifth factor it is evident that the Trustee has again failed. There is not a scintilla of evidence that the actions surrounding the 1213 property caused the Debtor to become insolvent. She had already admitted to being insolvent in 2001 when she filed her Chapter 13. Since the dismissal of the Chapter 13 case it is unclear whether the Debtor ever became solvent. However, based on the record before it, the Court is convinced that if the

Page 8 of 13

Debtor did become solvent she remained teetering on the precipice ever so dangerously close to insolvency. And the activity revolving around the 1213 property had no effect on her solvency.

The sixth factor is not applicable. There is no judgment against the Debtor.

The seventh factor has not been established. The Debtor did not fail to receive adequate consideration for the transfer of the 1213 property. This is similar to the situation in *Jensen v. Gillman (In re: Gillman)*, in that case the court determined in the context of a §548 action, that the transfer of mere legal title had no economic value. *Jensen v. Gillman (In re: Gillman)*, 120 B.R. 219, 220 (M.D. Fla 1990)(holding that" the Debtor never had anything more than a bare legal title interest in the property and what he transferred had no real economic value."). The Debtor, in this case, had no equitable interest in the property.[6] The Debtor held at best mere legal title. From an equitable perspective, the Debtor merely gave Crosdale full control of the property. This is equitable because Crosdale was the one who, chose, paid, and maintained the property. The Debtor's only involvement was the signing of a few documents. Thus, the Debtor did not fail to receive adequate consideration.

Based on the foregoing the Trustee has failed to establish that the Debtor acted "with intent to hinder, delay or defraud a creditor..." Consequently, the Trustee's §727(a)(2) Objection to Discharge must be denied.

### Trustee's §727(a)(3) Claim

The Trustee also objects pursuant to §727(a)(3). In order to successfully object to discharge under §727(a)(3) the Trustee must establish, by a preponderance of the evidence that:

---

[6] The issue of the Debtor's interest in the 1213 property is more fully addressed in the concurrently issued *Memorandum Opinion Denying Complaint To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C.§548 and Florida Statutes §725 et seq. And to Sell Real Property Pursuant to 11 U.S.C. §363(h)*.

> (3)the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

The relevant test for a §727(a)(3) action is whether the debtor's financial papers and disclosures are sufficient to enable the creditors and trustee to ascertain the debtor's financial condition and material business transactions. See *In re Fink*, No.CV185-51, 1986 U.S. Dist. LEXIS 17858, at *13 (S.D. Ga. Nov. 10, 1986);*Citrus & Chem. Bank v. Floyd (In re: Floyd)*, 322 B.R. 205, 213 (Bankr. M.D. Fla. 2005)(stating that "a plaintiff must establish (1) either that the debtor failed to keep or preserve any recorded information, or that he destroyed, mutilated, falsified, or concealed recorded information, and (2) that it is impossible to ascertain the financial condition of the debtor as a result of the debtor's conduct."); *Bakst v. Isles (In re: Isles)*, 297 B.R. 910, 915-16 (Bankr. S.D. Fla. 2003)(noting that a debtor has "an affirmative duty to provide documents that memorialize their financial history for a reasonable period past to present, and neither the trustee nor the creditors is required to ferret out the required records.").

The *Bakst v. Isles* case, upon which the Trustee relies is fundamentally different then the case before this Court. In *Bakst,* the husband was a life insurance agent and the wife was a registered nurse. See *Bakst v. Isles* 297 B.R. 915. The court found that they both understood the need to maintain adequate financial records. The court also noted that they failed to list a stock account. See *Bakst v. Isles* 297 B.R. 913. The Isles also failed to list about $4,500 worth of new furniture purchased three months before filing. *See id.* Further, when the schedules were amended to include the new furniture it was listed for one-half its value. *See id.* They also failed to list the sale of their home, however, when they did amend their schedules to reflect the sale they left out key pieces of information. See *Bakst v. Isles* 297 B.R. 914. Finally, the court

found the debtors to be less then credible. See Bakst v. Isles 297 B.R. 913 (noting that "Ms. Isles' testimony was inconsistent throughout trial as to whether she anticipated receiving any money from [the stock account] upon retirement." The court also found a "lack of credibility" regarding the debtors testimony regarding their second mortgage).

The Debtor, in the case before this Court, did not act in manner similar to the debtors in Bakst. The Debtor, in the instant case, did not have an extensive education nor has she been shown to be financially aware. While she did leave some information off of her schedules, when she was asked for the information she provided it and both of the assets that were left off were of a small amount and were exempt. Furthermore and most importantly, the Debtor and Crosdale's testimonies have been consistent and credible, both with each other and with the other evidence presented.

The Trustee argues that the Debtor has been unable to account for the money that was received from the mortgaging of the 1213 property. The testimony of the Debtor and Crosdale, as well as, the bank statements and correspondence from the mortgage company all show that Crosdale was the only one who received the money from the mortgage. Therefore, it is not surprising that the Debtor is unable to account for money that she never received. §727(a)(3) does not require a debtor to provide financial information of another person who is uninvolved the debtor's bankruptcy.

Based on the foregoing the Court concludes that the Debtor did not conduct herself in such a manner as to prevent her creditors or the trustee from accurately ascertaining her financial position. As such, the Trustee has failed to meet his burden.

### Trustee's §727(a)(4) Claim

Finally the Court turns to the Trustee's objection based upon §727(a)(4). In order to successfully object to discharge pursuant to §727(a)(4) the Trustee must establish, by a preponderance of the evidence that:

> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>     (A) made a false oath or account;

In to prevail on this claim the Trustee "must establish that the debtor knowingly and fraudulently made a false oath and that this oath pertained to a material fact." See *Chambers v. Bendetti (In re: Bendetti)*, 131 Fed. Appx. 224, 226 (11th Cir. 2005). This claim can be reduced to a five element test: (i) the debtor made a statement under oath; (ii) the statement was false; (iii) the debtor knew the statement was false; (iv) the debtor made the statement with the intent to deceive ; (v) the statement related materially to the bankruptcy case. See *Citrus & Chem. Bank v. Floyd (In re: Floyd)*, 322 B.R. 205, 214 (Bankr. M.D. Fla. 2005).

The first and second elements are undisputed. However, the trustee has failed to meet the fourth element, with respect to the Tax Sheltered Annuity and the Wal-Mart Associate Stock Plan. The Debtor credibly testified that she made a mistake by omitting to list the Tax Sheltered Annuity and Wal-Mart Associate Stock Plan. After being informed of her mistake she promptly amended her schedules to include those two exempt assets. She did not act with the intent to deceive by leaving off these two assets.

Regarding the Debtor's failure to include the mortgage on her schedules. The Debtor credibly testified that she did not know she was signing a mortgage. Thus with respect to this asset the Trustee has failed under both the third and fourth elements. The Debtor did not know the statement was false. She had no idea she signed a mortgage. Also, the debtor did not make the statement with the intent to deceive.

Based on the foregoing the Court denies the Trustee's Objection to Discharge pursuant to §727(a)(4). A separate Final Judgement in accordance with FED. R. BANKR. P. 9021 shall be entered contemporaneously herewith.

Copies to:

Michael R. Bakst, Esq.
Chester G. McLeod, Esq.
Mitchell H. Sens, Esq.
Gillion M. Crosdale
Joan E. Moodie
Soneet Kaplia